0419

SOUTHERN REGION INDUSTRIAL REALTY, INC., formerly Georgia Industrial Realty Company, Respondent, v. J. S. TIMMERMAN and William H. Linder as Tax Collector for Richland County, South Carolina, Appellants.

(328 S. E. (2d) 128)

Court of Appeals

*D. Reece Williams, III, Frank R. Ellerbe, III,* and *Joseph C. Coleman,* Columbia, *for appellants.*

*E. McLeod Singletary, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, P.A.,* Columbia, *for respondent.*

Heard Jan. 30, 1985.

Decided March 18, 1985.

CURETON, Judge:

This is an action to set aside a tax deed. The appellant Tax Collector for Richland County (Tax Collector) sold property owned by the respondent Southern Region Industrial Realty, Inc. (Southern) to appellant Timmerman to pay delinquent taxes. The trial court found that the sale was not held in accordance with the tax sale statute and set aside the tax deed. We affirm.

The questions presented on this appeal are (1) whether the court erred in applying S. C. Code Ann. Section 12-49-460 rather than Section 12-51-40 to the sale,[1] (2) whether the statute was strictly complied with in terms of the requirements for giving notice, levying, advertising and selling the property, and (3) whether the Tax Collector sold more property than was necessary to pay the past due taxes.

In July 1973, Georgia Industrial Realty Company acquired title to a six-acre tract of unimproved land in Richland County. In April 1974, Georgia Industrial Realty Company changed its name to Southern Region Industrial Realty, Inc. On January 27, 1978, Southern conveyed 1.57 acres of the six-acre tract to the State of South Carolina for highway purposes, retaining 4.53 acres. A road was constructed by the Highway Department on the 1.57 acres which divided the 4.53

---

[1] Both tax statutes, Section 12-49-460, commonly referred to as the "usual procedure" statute, differs from Section 12-51-40, the "alternate procedure" statute, in the amount of notice required to be given the taxpayer.

acres into two parcels, one containing .67 acres and the other containing 3.86 acres.

On the Richland County tax rolls for 1974, the property was listed in the name of Georgia Industrial Realty but carried the address of Piggly-Wiggly of Charleston, a former owner of the property. For the years after 1974, the property was properly listed in the name of Southern but the tax rolls continued to list the Piggly-Wiggly address. In 1976, an agent for Southern Railway Company, the parent company of Southern, received the 1976 tax notice, forwarded it to Southern at its Atlanta address and notified the Richland County taxing authorities of Southern's correct address. He further requested that the tax records be changed accordingly. The Auditor complied by changing his records, but the Treasurer and Tax Collector did not change their records for the tax years here involved. Southern paid the 1976 taxes.

Taxes were not paid for the years 1974, 1975, 1977 and 1978. In December 1979, the Treasurer for Richland County sent a letter to Southern at the incorrect Charleston address advising it that taxes in the amount of $2,075.55 were past due and if payment was not made he would commence action to enforce collection. Thereafter, in January 1980, the Treasurer issued to the Tax Collector of Richland County an execution against Southern for the past due taxes. The same month, a deputy tax collector sought to levy upon and take exclusive possession of the property. It is undisputed that the deputy's only acts of levying upon the property consisted of going upon the .67 acre tract and posting a "For Sale" sign and a "Notice of Seizure of Real or Personal Property for Taxes" sign on a tree.

The Tax Collector then advertised the entire six-acre tract for sale as if it had not been divided and sold the tract to appellant Timmerman at a tax sale in February 1980 for the sum of $8,000.00. Thereafter, the Tax Collector conveyed the property to Timmerman by proper tax deed.

With respect to the question of whether the court applied the appropriate statute to the sale in this case, we hold that the Tax Collector and Timmerman may not now claim that the Tax Collector did not proceed under provisions of Code Section 12-49-460. The record does not reflect that the parties raised the question of the applicability

of Section 12-51-40 at the trial level. It may not now be raised for the first time on appeal. *Murphy v. Hagan,* 275 S. C. 334, 271 S. E. (2d) 311 (1980); *Mackey v. Kerr-McGee Chemical Co.,* 280 S. C. 265, 312 S. E. (2d) 565 (S. C. App. 1984). Southern's complaint alleges that the Tax Collector proceeded under Section 12-49-460. Neither the Tax Collector nor Timmerman contended otherwise in his pleadings. Moreover, the trial judge's decision to set aside the tax deed is based upon the failure of the Tax Collector to comply with Code Section 12-49-460. None of the apellants' exceptions address error on the part of the trial judge in basing his decision on applicable law. Where a contention is not raised by proper exception, this court may not consider the issue on appeal. *Odom v. Florence County,* 258 S. C. 480, 189 S. E. (2d) 293 (1972); *Evans v. Bruce,* 245 S. C. 42, 138 S. E. (2d) 643 (1964).

We next discuss the matter of whether the taxing authorities followed Code Section 12-49-460 in selling the property.[2] The Tax Collector and Timmerman argue that the statute was complied with. We agree as to the .67 acre tract, but disagree as to the larger tract. We note first that Southern does not argue that the taxes were erroneously assessed. While it is true that without strict compliance with the statutory requirements, a tax sale will not be upheld, the taxing authorities will be deemed to have complied with the statute if the property was listed, assessed, levied upon, advertised and sold in the name of the true owner. *Vallentine v. Robinson,* 188 S. C. 194, 198 S. E. 197 (1938). Here, there is evidence that the property was listed, assessed, levied upon, advertised and sold in Southern's name. Southern argues, nevertheless, that because the tax records did not show its correct address and because all notices associated with the sale went to the Charleston address, the trial court should

---

[2] Section 12-49-460 provides in relevant part: Under and by virtue of such warrant or execution the sheriff shall:

(1) Seize and take possession of so much of the defaulting taxpayer's estate, real, personal or both, as may be necessary to raise the sums of money named therein and such charges thereon;

(2) After due advertisement, sell the property so seized before the courthouse door in the county, on a regular sales day and within usual hours for public sales for cash;

. . . .

have concluded it did not receive the notice required under the statute. We disagree. Nowhere in the statute is there a requirement that the Tax Collector give the owner actual notice each year of the taxes due or actual notice of the levy, seizure, advertisement or sale. As stated in the case of *Osborne v. Vallentine*, 196 S. C. 90, 94, 12 S. E. (2d) 856, 858 (1941):

> It is an anomalous situation that the statutes of this State require actual notice to a mortgagee of land about to be sold for taxes, and make no such requirement for actual notice to the owner. It would appear that the constructive notice provided by the levy, advertisement and sale in the owner's name is deemed sufficient. Such notice as to the owner, as required by the tax sale statutes, being constructive rather than actual, the court requires strict compliance therewith.

We agree with Southern that the statute was not complied with by the Tax Collector in seizing and taking exclusive possession of the 3.86 acre tract. Code Section 12-49-460 requires the Tax Collector to take exclusive possession of the property before sale. The cases construing this section have stated:

> It is sufficient that the sheriff ... enter upon such real estate, armed with the tax execution, exhibit it, and notify the owner that under authority of the execution he has seized and taken possession of the land in his official capacity. *This step constitutes the levy, and gives to the sheriff the lawful possession contemplated by the statute.*

*Glymph v. Smith*, 180 S. C. 382, 388, 185 S. E. 911, 105 A. L. R. 631 (1936) (emphasis added); *accord, Dibble v. Bryant*, 274 S. C. 481, 485, 265 S. E. (2d) 673 (1980); *First National Bank of Holly Hill v. Hair*, 200 S. C. 36, 20 S. E. (2d) 219, 223 (1942).

In the present case, the .67 acre tract and the 3.86 acre tract were separated by a state road. The Deputy Tax Collector neither set foot upon the 3.86 acre tract nor posted it in any way. On the facts of this case, we hold that the Tax Collector never seized and took exclusive possession of the 3.86 acre tract as contemplated by the statute and thus the tax deed must be set aside to that tract.

We agree with the trial judge that the tax deed must

also be set aside as to the .67 acre tract because the levy was excessive. Section 12-49-460 permits the selling authorities to seize and sell only "so much of the defaulting taxpayer's estate . . . as may be necessary to raise the sums of money named" in the execution. The question of excessiveness is a question of fact. *Dickson v. Burckmyer*, 67 S. C. 526, 46 S. E. (2d) 343 (1903). Therefore, the trial judge's finding of excessiveness will not be disturbed on appeal unless found to be without evidentiary support. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

As stated in *Dickson v. Burckmeyer, supra,* there are no fixed guidelines as to what constitutes an excessive sale. Thus, the question presented in each case is whether the selling officer exercised reasonable discretion in selling as much of the property as he did. As there was evidence that even the smaller tract was worth several times the amount of the taxes due and since both tracts combined actually sold for approximately four times the amount of the taxes due ($8,000.00), we conclude that there was evidence to support the trial judge's ruling on this point.

Accordingly, the order of the trial judge is affirmed.

Affirmed.

SHAW and GOOLSBY, JJ., concur.