# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

315 Corley CW LLC; 368 Mount Pelia LLC; Bridge Charleston Investments B LLC; Bridge Charleston Investments C LLC; Bridge Charleston Investments E LLC; Bridge Charleston Investments H LLC; Anne Bosler and Dylan Hart as Trustees of the Bosler-Hart Trust; Geoffrey J. Block; R. Jeffrey Kimball and Deborah S. Kimball; Sebrina Leigh-Jones and Chris Leigh-Jones; Jennifer Albero; Live Oak Assets LLC; Matthew N. Lynch and Barbara A. Lynch; MKM 22 West LLC; One Rumford Lane LLC; Salt Works LLC; and TTJR LLC; individually, derivatively, and as class representatives, as set forth herein, Respondents,

v.

Palmetto Bluff Development, LLC; Palmetto Bluff Club, LLC; Palmetto Bluff Real Estate Company, LLC; PBLH, LLC; Montage Palmetto Bluff, LLC; Palmetto Bluff Preservation Trust, Inc.; Palmetto Bluff Preservation Trust Board of Stewards: Jordan Phillips; Mark Polites; Gray Ferguson; Henry Armistead; South Street Partners, LLC; John Does 1-25, Petitioners.

Appellate Case No. 2024-002098

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Beaufort County
R. Ferrell Cothran Jr., Circuit Court Judge

---

Opinion No. 28339
Heard April 22, 2026 – Filed June 10, 2026

## AFFIRMED AS MODIFIED

Kirsten Elena Small, of Greenville, Val H. Stieglitz III, of Columbia, and Robert Bruce Wallace, of Charleston, all of Maynard Nexsen, PC; Douglas Walker MacKelcan III, of Copeland, Stair, Valz & Lovell, LLP, of Charleston; and Donald Falk, of Schaerr Jaffe, LLP, of San Francisco, California, all for Petitioners.

Ian Scott Ford, Ainsley Fisher Tillman, and Robert Edward Byrd, all of Ford Wallace Thomson, LLC, of Charleston, for Respondents.

Robert Walker Humphrey II, of Willoughby Humphrey & D'Antoni, P.A., of Charleston, as Amicus Curiae for Public Investors Advocate Bar Association. Jennifer Hess Thiem and Tre A. Holloway, of K&L Gates, LLP, of Charleston, as Amicus Curiae for South Carolina Restaurant and Lodging Association.

**PER CURIAM:** This appeal arises from an order of the circuit court denying a motion to compel arbitration filed by Palmetto Bluff Development, LLC; Palmetto Bluff Club, LLC; and other entities involved in the management of the coastal resort community known as Palmetto Bluff. The court of appeals affirmed the circuit court's order. *315 Corley CW LLC v. Palmetto Bluff Dev., LLC*, 444 S.C. 521, 537, 908 S.E.2d 892, 900 (Ct. App. 2024). The Palmetto Bluff entities filed a petition for a writ of certiorari, which we granted. We affirm the court of appeals as modified.

## I.     Facts and Procedural History

The court of appeals' opinion contains an exhaustive survey of the facts. *315 Corley*, 444 S.C. at 526-27, 908 S.E.2d at 894-95. The Palmetto Bluff community is a luxury resort community located in Bluffton, South Carolina. To purchase property within the Palmetto Bluff community, the purchaser must become a member of the Palmetto Bluff Club by signing a Membership Agreement. The Membership Agreement contains an arbitration provision. The plaintiffs in this case are property

owners within the Palmetto Bluff community who marketed their properties for short-term rentals on national internet-based platforms.

In 2019, the Palmetto Bluff Club began restricting and eventually prohibiting access to Club amenities for these short-term rental guests. The property owners objected to these changes and eventually filed this action in circuit court, making several claims against the Palmetto Bluff entities. From this point, we will refer to these entities simply as "Palmetto Bluff."

Palmetto Bluff filed a motion to compel arbitration, relying on the arbitration provision in the signed Membership Agreements. The property owners filed a motion to stay arbitration and a motion for partial summary judgment, arguing the arbitration provision was unconscionable. After a hearing on the motions, the circuit court issued an order denying Palmetto Bluff's motion to compel arbitration. Relying on subsection 15-48-20(a) of the South Carolina Code (2005) and *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 23-24, 644 S.E.2d 663, 668 (2007), the circuit court determined the court was required to decide the issue of unconscionability and found the arbitration provision unconscionable.

## II. Interstate Commerce

We first consider Palmetto Bluff's argument that the transactions giving rise to these lawsuits between the property owners and Palmetto Bluff involved interstate commerce. "Generally, any arbitration agreement affecting interstate commerce . . . is subject to the FAA." *Landers v. Fed. Deposit Ins. Corp.*, 402 S.C. 100, 108, 739 S.E.2d 209, 213 (2013). *See* 9 U.S.C. §§ 1-16 (the Federal Arbitration Act (FAA)). "[A] party seeking to compel arbitration under the FAA must demonstrate that the contract implicates interstate commerce." *Hicks Unlimited, Inc. v. UniFirst Corp.*, 439 S.C. 623, 632, 889 S.E.2d 564, 568 (2023). "To ascertain whether a contract involves interstate commerce" as required by the FAA, "the court examines 'the agreement, the complaint, and the surrounding facts,' including any affidavits submitted." *Hicks Unlimited*, 439 S.C. at 633, 889 S.E.2d at 569 (quoting *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 380, 759 S.E.2d 727, 732 (2014)).

We agree with Palmetto Bluff that these transactions implicate interstate commerce. Palmetto Bluff attached an affidavit of Palmetto Bluff Investments, LLC vice president of operations Gray Ferguson to its memorandum in support of its motion to compel arbitration. In this affidavit, Ferguson stated eight of the property owners now bringing this lawsuit were out-of-state residents at the time they purchased their

properties and obtained Club membership. Ferguson also provided a list of nationwide websites the property owners use to advertise their properties for short-term rental. Based on the Membership Agreements signed by out-of-state residents, the complaint alleging damages to the property owners' short-term rental income, the online marketing to a national audience of these short-term rentals, and the extensive interstate financial transactions necessary to accomplish both the marketing and the rentals, we find these transactions implicate interstate commerce. Therefore, we hold the FAA applies.

## III. Delegation of Issues of Arbitrability

"The FAA presumes parties intend that the court, rather than an arbitrator, will decide 'gateway' issues related to arbitration, including whether the arbitration agreement is valid and enforceable and whether it covers the parties' dispute." *Doe v. TCSC, LLC*, 430 S.C. 602, 608, 846 S.E.2d 874, 877 (Ct. App. 2020) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 993-94 (1995)). Whether the arbitration provision is unconscionable—and thus unenforceable—is one of these "gateway" issues. The FAA provides parties may "delegate these gateway issues to an arbitrator." *Id.* However, there must be "clear and unmistakable" evidence of delegation of the authority to determine issues of arbitrability. *Id.* (citing *First Options*, 514 U.S. at 944-45, 115 S. Ct. at 1924, 131 L. Ed. 2d at 994).

To demonstrate this "clear and unmistakable" evidence of delegation, Palmetto Bluff points out the arbitration provision states that any arbitration be carried out in accordance with American Arbitration Association (AAA) rules. *See* AAA COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES Rule 7(a) (2022) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."). Palmetto Bluff then argues the incorporation of the AAA rules in the arbitration provision clearly and unmistakably indicates the parties agreed to have an arbitrator—not a court—decide issues of arbitrability. We disagree.

The question requires us to determine the intent of the parties. *See Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC*, 432 S.C. 633, 639, 856 S.E.2d 150, 153 (2021) ("[C]ourts must respect and enforce a contractual provision to arbitrate as it respects and enforces all contractual provisions."); *N. Am. Rescue Prods., Inc. v. Richardson*, 411 S.C. 371, 378, 769 S.E.2d 237, 240 (2015) ("The primary concern

of the court interpreting a contract is to give effect to the intent of the parties."); *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009) ("The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language.").

While we acknowledge the incorporation of the AAA rules is some evidence of an intent to delegate this authority, there are several specific provisions in the Palmetto Bluff Membership Agreements that indicate the opposite—that the parties intended the procedural provisions of South Carolina law—which require a court to determine arbitrability—to apply. Initially, the first page of each Membership Agreement states, "<u>THIS MEMBERSHIP AGREEMENT IS SUBJECT TO ARBITRATION PURSUANT TO SOUTH CAROLINA CODE SECTION 15-48-10, ET. SEQ.</u>," referencing the entirety of the South Carolina Uniform Arbitration Act (SCUAA). *See* S.C. Code Ann. §§ 15-48-10 to -240 (2005). This statement tracks the requirement of subsection 15-48-10(a) that "Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract . . . . " The statement on the Palmetto Bluff Membership Agreement goes farther than required by subsection 15-48-10(a), however, and provides that the entire SCUAA applies to the Membership Agreement. Under subsection 15-48-20(a) of the SCUAA, the court—not the arbitrator—must determine the question of arbitrability. *See Simpson*, 373 S.C. at 22, 644 S.E.2d at 667 ("[W]here one party denies the existence of an arbitration agreement raised by an opposing party, a court must immediately determine whether the agreement exists in the first place." (citing § 15-48-20(a))).

Second, the Membership Agreement states, "This Membership Agreement shall be governed by and construed and enforced in accordance with the laws of the State of South Carolina without giving effect to principles of conflicts of laws."

These two provisions indicate the parties' intent to apply the procedural law of South Carolina to the arbitration provision, and those procedural rules require the court to determine arbitrability issues, including the question of unconscionability. § 15-48-20(a); *Simpson*, 373 S.C. at 22, 644 S.E.2d at 667.

We recognize that when determining whether the parties chose to delegate the authority to determine arbitrability issues to the arbitrator, we must focus on the language contained within the arbitration provision itself and not rely on other parts of the agreement. *Doe*, 430 S.C. at 607, 846 S.E.2d at 876 ("Because an arbitration provision is often one of many provisions in a contract covering many other aspects of the transaction, the first task of a court is to separate the arbitration provision from

the rest of the contract."). However, when we are considering whether an arbitration provision contains a clear and unmistakable delegation, for the limited purpose of determining the parties' intent, the Court will look beyond the arbitration provision to discern if anything clarifies this intent. *See Koon v. Fares*, 379 S.C. 150, 155, 666 S.E.2d 230, 233 (2008) ("The purpose of the rules of contract construction is to ascertain the intention of the parties as gathered from the contents of the entire document and not from any particular provision within the contract."); 30 S.C. JUR. CONTRACTS § 37 ("The intention of the parties to a contract must be gathered from the contents of the entire agreement, and not from any particular clause of the agreement."). In addition, we find the statement referenced above from the first page of the Membership Agreement is, in fact, part of the arbitration provision, as it specifically states the Membership Agreement "IS SUBJECT TO ARBITRATION."

We acknowledge Palmetto Bluff's argument that almost every Federal Circuit Court of Appeals has found the incorporation of the AAA Rules into an arbitration provision is by itself "clear and unmistakable" evidence the parties intended to delegate questions of arbitrability to the arbitrator. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (stating "eleven out of twelve" of the Federal Circuit Courts of Appeal—including the United States Court of Appeals for the Fourth Circuit—have determined this incorporation serves as clear and unmistakable evidence). However, these federal cases are distinguishable from this case. For example, the arbitration provision in *Blanton* included only a reference to the AAA Rules, and the *Blanton* opinion makes no mention of any reference in the agreement containing the arbitration provision to state arbitration rules that would negate an intent to delegate arbitrability. 962 F.3d at 843-44; *see also Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005) (finding "clear and unmistakable" evidence of intent to delegate arbitrability based only on the reference to the AAA rules, with the opinion making no mention of any reference in the agreement containing the arbitration provision to state arbitration rules that would negate an intent to delegate arbitrability); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7 (1st Cir. 2009) (same).

Because we find these two statements indicate an intent that the procedural provisions of South Carolina arbitration law apply, and because these procedural provisions require arbitrability to be decided by the court, it necessarily follows that we also find there is not clear and unmistakable intent to delegate the question of arbitrability to the arbitrator. As the parties did not effectively delegate issues of arbitrability to the arbitrator, the circuit court was correct in determining it was required to decide whether the arbitration provision was unconscionable.

## IV. Unconscionability

"[U]nconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson*, 373 S.C. at 24, 644 S.E.2d at 668. The circuit court found the arbitration provision was unconscionable for several reasons, including that a term within the arbitration provision purports to shorten the statute of limitations in violation of section 15-3-140 of the South Carolina Code (2005). We agree. Section 15-3-140 "forbids and renders void contract clauses attempting to shorten the legal statute of limitations." *Huskins v. Mungo Homes, LLC*, 444 S.C. 592, 594, 910 S.E.2d 474, 476 (2024). The arbitration provision in the Membership Agreement states, "The party demanding arbitration of any controversy, dispute or claim . . . shall give written notice of such demand to the other party and shall file the same with the [AAA]. Such written notice shall be given no later than sixty . . . calendar days after the conclusion of . . . mediation."

The arbitration provision we addressed in *Huskins* was similar. In that case, we held an arbitration provision term stating, "Each and every demand for arbitration shall be made within ninety . . . days after the claim, dispute or other matter in question has arisen, except that any claim, dispute or matter in question not asserted within said time periods shall be deemed waived and forever barred" was "unenforceable because it [was] void and illegal as a matter of public policy." *Huskins*, 444 S.C. at 594-95, 910 S.E.2d at 475-76. We explained this term violated South Carolina law by "attempting to shorten the legal statute of limitations" "for any claim to the ninety-day period." *Huskins*, 444 S.C. at 594, 910 S.E.2d at 476. We acknowledge the sixty-day window in this arbitration provision is not exactly the same as the provision in *Huskins*. We hold, however, that it is not functionally different. Therefore, we find the circuit court was correct in determining this term rendered the arbitration provision unconscionable.

## V. Conclusion

For the reasons explained above, we affirm the court of appeals as modified.

**AFFIRMED AS MODIFIED.**

**KITTREDGE, C.J., FEW, JAMES, VERDIN, JJ., and Acting Justice Michael Gary Nettles, concur.**